# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STONE & WEBSTER, INC.** *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 12-1783 (CKK) |
| **GEORGIA POWER COMPANY** *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION
(August 30, 2013)

This contract action comes before the Court following a highly choreographed "race-to-the-courthouse" in which the counterparties to an agreement concerning the design and construction of nuclear electrical generating units in Waynesboro, Georgia sought to file their mirror-image complaints first in the forum of their choice. On November 1, 2012, Plaintiffs Stone & Webster, Inc. and Westinghouse Electric Company LLC (together "Plaintiffs") filed the instant [1] Complaint against Defendants Georgia Power Company, Oglethorpe Power Corporation, Municipal Electric Authority of Georgia, and the City of Dalton, Georgia (collectively "Defendants"), asserting claims for breach of contract and violation of the Georgia Prompt Payment Act, O.C.G.A. §§ 13-11-1 *et. seq*, arising from Defendants' alleged refusal to agree to adjustments to the contract price and project schedule to which Plaintiffs claim they are entitled. That same date, November 1, 2012, Defendants filed their own action in Augusta, Georgia, in the United States District Court for the Southern District of Georgia, seeking a declaratory judgment that Plaintiffs are not entitled to the price and schedule adjustments for which Plaintiffs previously submitted change orders, as well as refunds of amounts paid by

Defendants to Plaintiffs pursuant to the parties' provisional payment agreement governing those change orders. *See generally Georgia Power Co. et al. v. Westinghouse Electric Company LLC et al.*, Civ. A. No. 112-167 (S.D. Ga.)(JRH-WLB).

Presently before the Court are Plaintiffs' [11] Motion to Enjoin the Prosecution of Defendants' Duplicative Georgia Action and Defendants' [13] Motion to Dismiss the Complaint, or in the Alternative, Stay this Action. Upon consideration of the parties' submissions,[1] the applicable authorities, and the entire record, the Court shall **DENY** Plaintiffs' motion to enjoin and **GRANT** Defendants' motion to dismiss. Accordingly, this action is hereby dismissed, without prejudice, in its entirety.[2]

## I. BACKGROUND

The disputes between the parties arise out of the design and construction of two nuclear electrical generating units at an electric generating plant in Waynesboro, Georgia (the "Project"). Defendants, who are the owners of the Project, and Plaintiffs, who collectively are the contractor on the Project, entered into an Engineering, Procurement and Construction Agreement ("EPC Agreement"), pursuant to which Plaintiffs allegedly agreed to design, engineer, procure, construct, and test the nuclear electrical generating units and related facilities and structures at the plant. Compl. ¶ 10.

---

[1] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Pls' Compl. ("Compl."), ECF No. [1]; Pls' Mot. to Enjoin the Prosecution of Defs' Duplicative Georgia Action and Mem. of P. & A. in Supp. Thereof ("Pls' Mem"), ECF No. [11]; Defs' Mot. to Dismiss the Compl., or in the Alternative, Stay this Action, and Supporting Stmt. of P. & A. ("Defs' Mem."), ECF No. [13]; Defs' Response in Opp'n to Pls' Mot. to Enjoin the Prosecution of Defs' Duplicative Georgia Action ("Defs' Opp'n"), ECF No. [23]; Pls' Reply in Supp. of Mot. to Enjoin the Prosecution of Defs' Duplicative Georgia Action and Pls' Opp'n to Defs' Mot. to Dismiss the Compl., or in the Alternative, Stay this Action and Mem. of P. & A. in Supp. Thereof ("Pls' Reply/Opp'n"), ECF No. [26]; Defs' Reply in Supp. of Defs' Mot. to Dismiss the Compl., or in the Alternative, Stay this Action ("Defs' Reply"), ECF No. [28]. In an exercise of its discretion, the Court finds that holding oral argument on the instant motions would not be of assistance in rendering a decision. *See* LCvR 7(f).

[2] Also pending before the Court is a motion to dismiss in a separate but related action involving the same parties, Civil Action Number 12-1226. That motion, which raises questions entirely distinct from those at issue here, will be addressed by separate order.

The instant Complaint asserts claims for breach of contract and violation of the Georgia Prompt Payment Act, O.C.G.A. §§ 13-11-1 *et. seq*, arising from Defendants' alleged failure to agree to adjustments to the contract price and project schedule to which Plaintiffs claim they are entitled. In essence, Plaintiffs claim that, subsequent to the effective date of the EPC Agreement, the United States Nuclear Regulatory Commission ("NRC") imposed various unforeseen directives, requirements, and regulatory changes that required Plaintiffs to make substantial design changes (hereinafter "Regulatory Changes"), thereby incurring considerable cost and delay. Plaintiffs contend that the NRC-imposed Regulatory Changes they made constitute compensable changes under the terms of the EPC Agreement, entitling them to adjustments to the contract price and project schedule. *See generally* Compl. For their part, Defendants contend that the EPC Agreement requires them to pay Plaintiffs a fixed price for designing, building, and making the Project operational within a guaranteed time limit and that Plaintiffs' invoices for amounts greatly exceeding the contractual fixed price are "unjustified." Defs' Reply at 3-4. Defendants further argue that Plaintiffs' prayer for adjustments to the project schedule and contract price is simply a request for judicial modification of the EPC Agreement so that Plaintiffs will be relieved of liability for their delay on the Project and permitted to submit otherwise unjustified invoices associated with such delay. *Id*.

Prior to commencement of the instant action, Plaintiffs submitted written notices of the Regulatory Changes. Subsequently, the parties undertook mediation pursuant to the EPC Agreement, which requires the parties to first mediate all disputes under the contract and prohibits the commencement of a civil action until such mediation concludes. As both Plaintiffs and Defendants represent in their pleadings and supporting declarations, the parties were aware of the "first-to-file" race to the courthouse that would likely result upon conclusion of an

unsuccessful mediation. *See* Pls' Mem. at 8; Defs' Mem. at 1. For this reason, the parties agreed that mediation would conclude at a date and time certain – specifically on November 1, 2012, at 8:00 p.m. – and that no lawsuit could be initiated before that time. *Id.* The events that ensued are of the kind scarcely encountered outside of the pages of a law school exam.

Plaintiffs filed the instant Complaint by way of this Court's electronic filing system. Plaintiffs contend that they, through counsel, clicked the "submit" button at precisely 8:00:00 p.m. on November 1, 2012, according to the United States Naval Observatory Master Clock. Pls' Mem. at 8-9; *id*, Ex. 9 (Decl. of Shawn Chick), ¶ 4; *id*., Ex. 10 (Decl. of David C. Smith), ¶ 4. The transaction log generated by the electronic filing system, a copy of which Plaintiffs have submitted with their motion to enjoin, lists "11/01/2012 20:00:01" as the "date" corresponding to the Complaint. *Id*., Ex. 11.

Defendants, to the contrary, opted to file their own complaint – which both parties describe as a "mirror image" of Plaintiffs' Complaint in this Court, s*ee* Pls' Mem. at 1; Defs' Mem. at 1 – in person and manually in the United States District Court for the Southern District of Georgia (the "Georgia action"). According to the declaration of Defendants' counsel, when both the minute hand and second hand on an iPhone clock indicated the time to be 8:00:00 p.m., counsel filed the Georgia action by simultaneously transferring possession of the original complaint and all requisite accompanying filings to the deputy clerk, whom noted the date ("November 1, 2012") and filing time ("8:00 p.m.") on the documents. Defs' Mem., Ex B. (Decl. of Benjamin H. Brewton); *see also* Pls' Mem., Ex. 1 (copy of original complaint in Georgia action).

In view of this duplicative litigation, Plaintiffs have filed a [11] motion requesting that the Court enjoin Defendants from prosecuting the Georgia action. In brief, Plaintiffs argue that

this Court is the proper Court to hear the parties' disputes regarding the Regulatory Changes because it is the court of the first-filed action and because, in any event, equitable considerations weigh in favor of this Court's retaining jurisdiction over the dispute. Defendants, on the other hand, have filed a [13] motion to dismiss, arguing the inverse: that the Georgia action was filed first and that equitable considerations call for resolution of the dispute in the Southern District of Georgia. Alternatively, Defendants request that the Court stay the present action to permit the Southern District of Georgia to determine which court should hear the parties' dispute.

## II. LEGAL STANDARD

District courts have the discretion to dismiss a pending action when faced with parallel litigation of factually related actions filed in two separate forums. *Handy v. Shaw*, 325 F.3d 346, 349 (D.C. Cir. 2003). Indeed, as the Supreme Court has observed, "though no precise rule has evolved, the general principle is to avoid duplicative litigation" between federal district courts. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citations omitted). "The usual rule in this circuit has been that where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *UtahAmerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (internal editing and citations omitted). However, the Court of Appeals has also warned against rigid application of the first-filed rule in cases where the second-filed action deserves priority. *See Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975). Stated differently, "the decisions recognizing the first-in-time rule note that 'equitable considerations' may weigh against applying it in particular cases." *UtahAmerican Energy, Inc.*, 685 F.3d at 1124 (citations omitted); *see also Handy*, 325 F.3d at 350 ("Although some courts make the determination [as to which district court should

adjudicate the case] by using the so-called 'first-to-file' rule, we have emphasized that the district court must balance equitable considerations rather than using 'a mechanical rule of thumb.'").

One factor weighing against mechanical operation of the first-to-file rule and in favor of consideration of the equities of a particular case is where, as here, "the two suits were filed closely together in time." *Int'l Painters & Allied Trades Indus. Pension Fund v. Painting Co.*, 569 F. Supp. 2d 113, 116 (D.D.C. 2008) (quoting *Fed'n Internationale de Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 67-68 (D.D.C. 2003)). Another important consideration in this balancing analysis is whether "the first-filing plaintiff has launched a 'preemptive strike' or declaratory judgment action in the face of an impending ... suit." *Nike*, 285 F. Supp. 2d at 67; *accord Thayer/Patricolf Educ. Funding*, LLC v. Pryor Res. Inc., 196 F. Supp. 2d 21, 30 (D.D.C. 2002). Other equitable considerations may include whether "the first action was filed in the midst of good faith settlement discussions"; "whether the cases have progressed very far"; and "whether full, fair, and complete adjudication of all issues may be had before the present court[.]" *Int'l Painters*, 569 F. Supp. 2d at 116 (internal citations and marks omitted). Courts also tend to consider the convenience and efficiency of proceeding in each forum. *See e.g., Columbia Plaza*, 525 F.3d at 627 (considering whether all parties are present in both cases; the location of witnesses; and the stage of the respective proceedings); *Furniture Brands Int'l, Inc. v. United States Int'l Trade Comm'n*, 804 F. Supp. 2d 1, 7 (D.D.C. 2011) (deferring to parallel litigation in the Court of International Trade ("CIT") because, *inter alia*, the CIT was far more familiar with the statutes at issue); *Thayer*, 196 F. Supp. 2d at 32 (considering statement from the plaintiff that a third party witness willingly volunteered to participate in the inconvenient forum); *Nike*, 285 F. Supp. 2d at 68 ("[T]he fact that a motion requiring expedited consideration has been

filed only in the infringement action, and that precious time would be lost if that motion had to be refiled in the other court, argues in favor of allowing the second-filed action to proceed."). Finally, at least one other court in this district has also considered as part of its balancing of the equities of parallel suits the "local interest in having localized controversies decided at home." *Villa v. Salazar*, --- F. Supp. 2d ---, 2013 WL 1245759, *5 (D.D.C. 2013) (transferring action by California Indian tribe leader to enjoin Department of Interior's acquisition in trust of a parcel of land in California for Indian gaming purposes to Eastern District of California) (quoting *MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 576 (D.C. Cir. 2010)).

### III. DISCUSSION

Preliminarily, the Court observes that both Plaintiffs and Defendants readily acknowledge that the instant action and the Georgia action are "mirror-image" suits regarding the invoices submitted by Plaintiffs in connection with the Regulatory Changes. Accordingly, there is no question that the parties' claims arise out of the same transaction such that they should – for judicial economy – be resolved in a single forum. *See Handy*, 325 F.3d at 350. The parties have submitted extensive briefing and supporting declarations on the issue of whether the instant Complaint (which Plaintiffs contend was filed "between 8:00:00 p.m. and 8:00:01 p.m.," Pls' Mem. at 4) or Defendants' complaint in the Georgia action (which bears a hand-written note from the deputy clerk of court indicating a filing time of "8:00 p.m.," *see* Pls' Mem., Ex. 1 (copy of original complaint in Georgia action)) was filed first. The Court need not, and in the interest of judicial economy, shall not reach this issue. This is because the Court finds, in an exercise of its discretion, that even if Plaintiffs were the first to file suit, equitable considerations weigh overwhelmingly in support of resolution of the parties' dispute by the Southern District of Georgia.

Most evident, one factor counseling against mechanical application of the first-to-file rule in this case is the fact that the "two suits were filed closely in time," *Int'l Painters*, 569 F. Supp. 2d at 116 – here, within, at most, seconds. As aforementioned, courts also tend to consider whether either of the cases has "progressed very far" and "whether full, fair, and complete adjudication of all issues may be had" before the courts. *Id*. Here, these two factors are in equipoise, as neither court has proceeded to making any merits determinations; nor does the Court have any reason to believe that either forum would not be capable of providing full, fair, and complete adjudication of the parties' dispute.

While, based on the foregoing factors, neither court stands apart as the clearly superior forum, the Court must consider whether there are other "equitable considerations genuinely relevant to the ends of justice" weighing in favor of either court. *Columbia Plaza*, 525 F.3d at 628. For reasons explained below, the Court finds that proceeding in the Southern District of Georgia would be significantly more convenient and efficient for both the federal judiciary and the parties and would additionally promote the "local interest in having localized controversies decided at home." *Villa*, --- F. Supp. 2d ---, 2013 WL 1245759, *5 (quoting *MBI Grp*, 616 F.3d at 576). Accordingly, and because Plaintiffs fail to convince the Court that any other equitable considerations weigh in favor of proceeding with the instant suit, the Court shall dismiss Plaintiffs' Complaint, without prejudice, in favor of the Georgia action.

**A. Equitable considerations favor resolution of the parties' dispute through the Georgia action.**

First, the Court notes that trying this case in the Southern District of Georgia would increase judicial efficiency for the simple reason that the Southern District of Georgia possesses greater familiarity with the laws applicable to the instant dispute, as the EPC Agreement is governed by Georgia law. *See* Defs' Mem., Ex. A (EPC Agreement excerpts), § 34.1 ("The

validity, construction, and performance of this Agreement shall be governed by and interpreted in accordance with the laws of the State of Georgia, without giving effect to the principles thereof relating to conflicts of laws."). Additionally, Plaintiffs' Complaint also raises claims under the Georgia Prompt Payment Act, O.C.G.A. §§ 13-11-1 *et. seq*. Although there is no question of this Court's competency to decide questions of statutes or contract interpretation under the law of any state, the Southern District of Georgia has, for obvious reasons, far more familiarity in applying principles of Georgia contract and statutory law to the cases before it. *See Furniture Brands Int'l,* 804 F. Supp. 2d at 7 (D.D.C. 2011) (deferring to parallel litigation in another court, noting that that court was far more familiar with the statutes at issue).

Second, the Court agrees with Defendants that trying the merits of the parties' causes of action in the Southern District of Georgia would permit easier access to relevant evidence. Most obviously, the construction site itself is in Waynesboro, Georgia, which lies within the geographic boundaries of the Southern District of Georgia. Additionally, Defendants have proffered a declaration from David McKinney, Vice President of Construction Support for Southern Nuclear Operating Company Nuclear Development, cataloging – with impressive specificity – several potential witnesses with knowledge of the claims, all of whom are primarily located in Georgia (with most residing and working in or near Augusta). *See* Defs' Mem. Ex B (Decl. of David L. McKinney), ECF No. [13-2] at 38 (hereinafter "McKinney Decl."), ¶ 9.

Plaintiffs argue that many potential witnesses are located in Pennsylvania, North Carolina, Indiana, California, and Maryland, and that this Court is the more convenient forum for these witnesses and the parties alike, given the easier air access to and from the two international airports in Washington, D.C., as opposed to the single regional airport in Augusta, Georgia. However, air travel would be required for almost all of these witnesses in either venue. When

weighed against the significant number of witnesses based in Augusta, Georgia, the mere fact that certain flights may be less frequent or of longer duration is of little moment. Furthermore, as many of the witnesses identified by Plaintiffs are Plaintiffs' own employees, the Court would be hard-pressed to find that Plaintiffs would be inconvenienced by sending their own employees to the site of the very Project that they have contracted to design and construct. There mere fact that certain non-party NRC witnesses are located in Washington, D.C., similarly carries little weight in the face of the significantly greater number of witnesses located in the Augusta area.

Finally, the Court agrees with Defendants that the ties between the parties' dispute and the Southern District of Georgia are numerous and undeniable. The nuclear generating units that are the subject of the EPC Agreement are being constructed for the purpose of meeting the future energy demands of Georgia residents, *see* McKinney Decl., ¶¶ 2, 5, and the power plant is the largest employer in Burke County, Georgia, as the construction and operation of the two units at issue in this case are expected to create a total of 4,000 to 5,000 jobs at the site, including approximately 800 permanent jobs and 3,500 construction jobs, *id.* ¶ 5. Furthermore, as Defendants contend and Plaintiffs nowhere dispute, much of the cost related to the construction of the Project or changes in the Project schedule will occur primarily at the project site in Georgia, and the cost of the Project potentially will impact the cost of electricity in the state of Georgia. *See id.* ¶ 7.

Clearly, the Project is a local project with significant local effects – a consideration counseling strongly in favor of resolution of the instant dispute by the Southern District of Georgia. To be sure, the Court does not disagree with Plaintiffs that the viability of nuclear power is a national, not simply a local, concern. However, the mere fact that the development of nuclear electrical generating units generally bears national import does not detract from the

undoubtedly significant impact of this particular Project on Georgia and its citizens. By contrast, other than the fact that the parties submitted to the non-exclusive jurisdiction of this Court, the District of Columbia has no material ties to the present dispute. Neither party is located in the District of Columbia; nor have Plaintiffs made any showing that the Project will have any impact whatsoever on the District or its citizens.

For all of the foregoing reasons, the Court finds that the balance of equitable factors unquestionably favors resolution of the instant dispute by the Southern District of Georgia instead of by this Court.

**B. Plaintiffs' arguments against dismissal of the instant action are unavailing.**

As a threshold matter, Plaintiffs argue that the Court should decline to consider Defendants' equitable arguments because the parties' expressly named this Court as a proper forum in their contract and Defendants in fact contractually waived their challenges to venue in this Court. Specifically, Plaintiffs rely upon Section 34.3 of the EPC Agreement, which provides:

> 34.3 <u>Venue</u>. The Parties agree to the non-exclusive jurisdiction of the United States District Court for the District of Columbia for any legal proceedings that may be brought by a Party arising out of or in connection with this Agreement or for recognition or enforcement of any judgment. Each party accepts, generally and unconditionally, the jurisdiction of the aforesaid court for legal proceedings arising out of or in connection with this Agreement. Each party hereby waives any right to stay or dismiss any action or proceeding under or in connection with this Agreement brought before the foregoing court on the basis of forum non-conveniens or improper venue. For the avoidance of doubt, the Parties do not, by this Section 34.3, waive any first-to-file challenges to venue.

Pls' Mem., Ex. 7 (EPC Agreement excerpts), § 34.3.

Plaintiffs' reliance on this provision is flawed. Preliminarily, while this section contains a permissive forum selection clause establishing this district as a proper forum, this is in no way dispositive of the first-to-file analysis, as it is by its terms *non-exclusive*. Furthermore,

Defendants are not arguing that venue is improper under 28 U.S.C. § 1390 or §1391; nor have they sought a transfer on forum non-conveniens grounds pursuant to 28 U.S.C. § 1404. Rather, Defendants have raised a first-to-file challenge to venue, which the above-excerpted provision of the EPC Agreement *expressly* authorizes. Defendants' reference to (and the Court's consideration of) convenience and other such equitable factors are simply part-and-parcel of the first-to-file analysis under binding Circuit authority. *See, e.g., Handy*, 325 F.3d at 350 ("[T]he district court *must* balance equitable considerations rather than using 'a mechanical [first-to-file] rule of thumb.'") (emphasis added).

Plaintiffs also attempt to characterize the Georgia action as an anticipatory and preemptive declaratory judgment action, arguing that Defendants' complaint in that action contains nothing more than defenses dressed up as claims, designed solely to deprive Plaintiffs' of their right as the "true plaintiffs" to have their claims heard in the court of their choosing. The argument lacks merit. To be sure, Plaintiffs are correct that one key consideration in the first-to-file balancing of the equities analysis is whether the first-filing plaintiff has launched a so-called preemptive strike or declaratory judgment action in the face of an impending suit. *See supra* Part II; *cf. Int'l Painters*, 569 F. Supp. 2d at 117 ("[A] preemptive filing is not dispositive."). However, for the below reasons, this is clearly not what happened here.

As all parties acknowledge, the two cases are "mirror-image" actions. Plaintiffs seek price adjustments totaling over $900 million resulting from Defendants' alleged failure to bear the costs of the Regulatory Changes that have and will be incurred by Plaintiffs, *see generally* Compl. Defendants, on the other hand, seek a declaratory judgment that Plaintiffs are not entitled to certain price and schedule adjustments *as well as* recovery over $100 million in alleged out-of-pocket losses resulting from Plaintiffs' alleged breach of the provisional payment provision of

the EPC Agreement by, *inter alia*, ignoring the contractual fixed price and presenting invoices to Defendants that are not justified under the agreement, *see generally* Pls' Mem., Ex. 1 (copy of original complaint in Georgia action). More specifically, Defendants contend that they paid 50% of the invoice amounts, provisionally and under protest. *See* Defs' Reply at 4. Defendants made these payments pursuant to Section 8.5(b) of the EPC Agreement, which requires such provisional payment of half of all disputed invoices pending resolution of the parties' dispute. *See* Pls' Mem., Ex. 12 (EPC Agreement excerpts), § 8.5(b). Notably, Section 8.5(b) expressly provides that such "[p]ayment shall not waive [Defendants'] right to dispute an invoice." *Id*. This language plainly suggests that Defendants have an affirmative right to seek a declaration from the Court that Plaintiffs are responsible for the costs associated with the Regulatory Changes and, resultantly, a ruling ordering Plaintiffs to reimburse Defendants for the over $100 million *already paid* on the disputed change order invoices. Furthermore, as Defendants contend and Plaintiffs nowhere dispute, the total dollar amount of the change orders alleged by Plaintiffs in the instant suit is not currently due and owing, but rather, is calculated based on the forecasted value of "additional" services Plaintiffs claim they will perform over the course of the next several years. *See* Defs' Opp'n at 4, 22. *See also generally* Compl. Accordingly, large portions of Plaintiffs' claims may themselves be fairly characterized as claims for prospective, declaratory relief. At bottom, both parties claims are mixed claims for coercive and declaratory relief, as both parties seek a judicial determination that under the terms of the EPC Agreement, the other party bears all past and future costs resulting from the Regulatory Changes.

Plaintiffs' argument that Defendants are not "true plaintiffs" is further discredited by the dispute resolution provisions of the EPC Agreement, which require the parties to mediate disputes regarding invoices and unambiguously provide that, if mediation fails, "with respect to a

Claim[3] that exceeds the Claim Threshold Amount, *either Party* shall have the right to proceed to litigation of such Claim in a court of competent jurisdiction." *See* Defs' Mem., Ex. A (EPC Agreement excerpts), § 27.4(a)(i) (emphasis added). Accordingly, the plain language of the EPC Agreement supports the position that Defendants were equally entitled to pursue claims for breach of the schedule and payment provisions of the EPC agreement and to seek refund of the $100 million they already contributed toward the allegedly unjustified change orders invoices as Plaintiffs were to seek adjustments to the contract price and schedule terms relating to the Regulatory Changes.

Basic logic, too, supports this interpretation of the parties' dispute. As Defendants astutely observe, Plaintiffs' position that Defendants are not "true plaintiffs" would require this Court to find that Defendants have no claim for breach of the provisional payment, schedule, and invoicing provisions of the EPC Agreement – or at least not unless and until Plaintiffs first decide to litigate the validity of the change orders. This, however, leads to the untenable conclusion that Plaintiffs would be free to submit invoices for an unlimited amount of charges, whether justified or not, and then demand that Defendants pay 50% of those invoices under Section 8.5(b) of the EPC Agreement – effectively an interest-free loan – and that Defendants would be without recourse to recoup those payments until and unless Plaintiffs filed suit.

Finally, while not dispositive on the issue, it bears mention that Plaintiffs' contention that Defendants disingenuously raced to the courthouse merely to preempt Plaintiffs' filing in this Court is belied by the record. As evidenced by the Parties' agreement as to the date and time mediation would "conclude" for purposes of filing suit, and the carefully orchestrated race to the court house that ensued, Plaintiffs – at least impliedly – acknowledged the possibility of a suit by

---

[3] The EPC Agreement also clearly defines a claim for the purposes of this contract: "[a] "Claim" is any claim, dispute, or other controversy arising out of or relating to this Agreement, including Change Disputes." Defs' Mem., Ex. A (EPC Agreement excerpts), § 27.1.

Defendants. As Defendants convincingly argue, this is simply "not a case where the putative first-filed plaintiff 'misled [the other party], or engaged in stall tactics to lull him into a false sense of security as they finalized [and filed] their [c]omplaint while his gaze was averted' in order to achieve 'some actual or perceived forum shopping advantage.'" Defs' Reply at 7-8 (quoting *Chambers v. Cooney*, Civ. A. No. 07-0373-WS-B, 2007 WL 2493682, at *5 (S.D. Ala. Aug 29, 2007)).[4]

In summary, the parties' course of conduct, language of both parties' complaints, the EPC Agreement, and basic logic compel the Court to conclude that the instant action and the Georgia action are simply flip-sides of a single coin. At bottom, both parties seek a judicial determination that, under the terms of the EPC Agreement, the other party should bear the cost of the Regulatory Changes and accordingly that that other party is in breach of its contractual obligations and owes the complainant a sum certain to compensate for that breach. This scenario is a far cry from cases finding declaratory judgments entitled to less deference in a first-to-file analysis. *Compare, e.g.*, *Lewis v. Nat'l Football League*, 813 F. Supp. 1, 4 (D.D.C. 1992) (suit seeking a declaratory judgment that the NFL bore no anti-trust liability for a first refusal/compensation restriction was a preemptive strike designed solely to obstruct anti-trust

---

[4] Quite to the contrary, Plaintiffs went so far as to try to win the race to the courthouse in advance, by filing in the Southern District of Georgia an "emergency petition" to have that district court direct the clerk of the court to refuse to accept Defendants' manually-filed complaint after business hours – a motion which the Honorable J. Randall Hall denied as without legal basis. *See* Defs' Mem., Ex. C (copy of Oct. 31, 2013 Order, *Stone & Webster et al. v. Georgia Power Company et al.*, Misc. A. No. 112-013 (S.D. Ga.) (JRH)). Similarly, on October 30, 2012, Plaintiffs filed a motion in a related action before this Court, Civil Action No. 12-1226, which sought an order declaring that the complaint Plaintiffs would ultimately file in the instant action be predetermined by this Court to have been filed as of 8:00:00 p.m. on November 1, 2013. *See Stone & Webster, Inc. et al. v. Georgia Power Co. et al.*, Civ. A. No. 12-1226 (CKK), ECF No. [33]. The undersigned denied that motion by Minute Order on November 6, 2012. *See id.*, Min. Order (Nov. 6, 2012) ("The Court declines to address a request for preemptive relief relating to a separate action which, at the time the instant motion was filed, had not even been commenced. Furthermore, with respect to the subject matter of Plaintiffs' request, the Court notes that the docket speaks for itself.").

suits brought by players in other fora and was therefore not entitled to the protection of the first-to-file rule); *Fed'n Internationale De Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 68 (D.D.C. 2003) (giving trademark infringement suit priority over earlier filed action seeking only declaratory judgment that use of a particular phrase was not trademark infringement because, among other equitable considerations, the declaratory judgment action was clearly nothing more than a preemptive strike).

## IV. CONCLUSION

For all of the reasons stated herein, the Court finds that equitable considerations unequivocally support a conclusion that the instant dispute should be decided by the United States District Court for the Southern District of Georgia instead of by this Court. Accordingly, and because all of Plaintiffs' arguments to the contrary are unavailing, Plaintiffs' [11] Motion to Enjoin the Prosecution of Defendants' Duplicative Georgia Action is **DENIED**, and Defendants' [13] Motion to Dismiss the Complaint is **GRANTED.** This action is hereby dismissed without prejudice so that Plaintiffs may remain free to assert their claims as counterclaims in the Georgia action.

An appropriate Order accompanies this Memorandum Opinion.

Dated: August 30, 2013

                                                          /s/
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge